UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NUMBER: CASE NO. 9:18-CR-80148-RLR

UNITED STATES OF AMERICA,          JUDGE: ROSENBERG

v.

MICHAEL PERKINS,

        Defendant,

_____/

## DEFENDANT'S EMERGENCY MOTION FOR COMPASSIONATE RELEASE / REDUCTION IN SENTENCE PURSUANT TO 18.U.S.C.§3582(c)(1)(A)(i)

Defendant, MICHAEL PERKINS, through undersigned counsel, respectfully moves this Court to grant this Emergency Motion for Compassionate Release and reduce his remaining prison time to home confinement to be followed by the previously ordered fifteen (15) years supervised release.

Defense Counsel has learned that Mr. Perkins, incarcerated at FCI-Miami has recently tested positive for Covid-19. This was confirmed by Assistant United States Attorney Gregory Schiller who obtained reports from FCI-Miami confirming the same. (Exhibit "A"). Based upon information and belief, Mr. Perkins remains hospitalized at Larkin Hospital, and his present condition is unknown as Defense Counsel has not been able to speak with anyone at FCI-Miami, Larkin Hospital or Mr. Perkins.

Mr. Perkins is a 61 year old man with serious medical conditions, including reduced respiratory capacity as a result of a firearm accident and type 2 diabetes. These conditions place Mr. Perkins in the Center for Disease Control and Prevention (CDC), high risk

category for developing serious illness or death if he were to contract Covid-19- which he now has tested positive. Mr. Perkins moves this Court to reduce his term of imprisonment to home confinement followed by the fifteen (15) years supervised release.

## I.     BACKGROUND

On September 13, 2018, Mr. Perkins, pursuant to a Plea Agreement with the Government, plead guilty to 1 Count of Possession of Child Pornography. On February 27, 2019, this Court sentenced him to sixty (60) months in prison, followed by fifteen (15) years of supervised release, with several special conditions including requiring Mr. Perkins to register as a Sex Offender. As a convicted Sex Offender Mr. Perkins will face significant restrictions on where he can live and work. He will be closely monitored.

Prior to pleading guilty and being sentenced and taken into custody, Mr. Perkins, spent six (6) months on pre-trial release abiding by all his strict pre-trial conditions. Mr. Perkins has thus demonstrated his ability and willingness to comply with Court Orders.

At Mr. Perkins' sentencing hearing, Mr. Perkins, through his counsel presented evidence of his noteworthy service to his family, as a father and son, his long time employment history and his exemplary work with the Boys Scouts. It was acknowledged that but for some misdemeanors when Mr. Perkins was a very young man, and prior to the instant case, Mr. Perkins had lead a law abiding life.

Mr. Perkins has been incarcerated since February 25, 2019. His release date is May 29, 2023, per "inmate locator" https://www.bop.gov/inmateloc.

## II.     LEGAL STANDARD

Ordinarily, a court "may not modify a term of imprisonment once it has been

2

imposed." 18 U.S.C.§3582(c); See, Dillon v. United States, 560 U.S. 817, 824-25 (2010). But "the rule of finality is subject to a few narrow exceptions." Freeman v. United States, 561 U.S. 522, 526 (2011). One such exception is when the modification is "expressly permitted by statute." 18 U.S.C.§3582(c)(1)(B).

Commonly termed the "Compassionate Release" provision, 18 U.S.C.§3582(c)(1)(A)(i) provides a statutory vehicle to modify a defendant's sentence. §3582 was adopted as part of the Sentencing Reform Act of 1984. It originally permitted a court to alter a sentence only upon a motion by the Director of the BOP. See, P.L. 98-473, §224(a), 98 Stat. 2030 (1984). However, for many years the BOP rarely filed motions on an inmate's behalf. As a result, Compassionate Release was exceedingly rare. See, "Hearing on Compassionate Release and the Conditions of Supervision Before the U.S. Sentencing Commission 66 (2016)" (statement of Michael E. Horowitz, Inspector General Dept. of Justice observing that, on average, only twenty-four (24) inmates were granted Compassionate Release per year between 1984 and 2013).

In December 2018, Congress significantly amended the Compassionate Release mechanism when it enacted the First Step Act of 2018 ("FSA"). See, P.L. 115-391, 132 Stat. 5239 (2018). As amended by the FSA, 18 U.S.C.§3582(c)(1)(A) permits a court to reduce a defendant's term of imprisonment "upon motion of the Director of [BOP], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of thirty (30) days from the receipt of such request by the warden of the defendant's

3

facility," whichever occurs first. So, once a defendant has exhausted his administrative remedies, he may petition a court directly for Compassionate Release.

A defendant, as the movant, bears the burden of establishing that he is entitled to a sentence reduction under 18 U.S.C.§3582. See, e.g., United States v. Hamilton, 715 F.3d 328, 337 (11th Cir. 2013).

Accordingly, there are four (4) prerequisites to this Court granting Mr. Perkins a Compassionate Release under the First Step Act. First, Mr. Perkins must have exhausted his administrative rights with the BOP, §3582(c)(1)(A); Second, the Court must find that "extraordinary and compelling reasons" exist which warrant release, §3582(c)(1)(A)(i); Third, the Court must consider the factors set forth in §3553(a); §3582(c)(1)(A). Fourth, the Court must find that a release is consistent with the Sentencing Commission's Policy Statements, §3582(c)(1)(A)(i).

## A. MR. PERKINS HAS EXHAUSTED HIS ADMINISTRATIVE REMEDIES

A defendant exhausts his administrative rights when the BOP fails to bring a motion for compassionate release on his behalf and he exercises all administrative rights to appeal, or after "the lapse of thirty (30) days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" §3582(c)(1)(A).

In the instant case, on May 27, 2020, Mr. Perkins sent an electronic request to the warden of FCI Miami through email via the prison True-link Computer Communication Network requesting a compassionate release as required by 18 U.S.C.§ 3582. On May 29, 2020, the warden acknowledged receipt of Mr. Perkins' request and directed him to forward his request to the unit manager responsible for the housing unit where he resides.

LAW OFFICES OF ROTH & DUNCAN, P.A.
SUITE 325 • NORTHBRIDGE CENTRE • 515 NORTH FLAGLER DRIVE • WEST PALM BEACH, FLORIDA 33401 • TEL. (561) 655-5529 • FAX (561) 655-7818

On May 29, 2020, Mr. Perkins forwarded the email thread to the unit manager. This communication has never been responded to (Exhibit "B"). Thus, the lapse of thirty (30) days has occurred, and Mr. Perkins has met the exhaustion requirement per §3582(c)(1)(A).

Assistant United States Attorney, Gregory Schiller, has advised defense counsel via email that the Government agrees that Mr. Perkins has satisfied the exhaustion requirement. (Exhibit "C").

### B. EXTRAORDINARY AND COMPELLING REASONS WARRANT JUSTIFY GRANTING MR. PERKINS' COMPASSIONATE RELEASE REQUEST

This is not undoubtedly the first Motion for Compassionate Release this Court has been asked to consider since Covid-19 surfaced[1]. Hence, Mr. Perkins will not go into detail discussing the unprecedented studies and the statistics of the serious deadly impact of Covid-19. Instead, Mr. Perkins will address specific details of the Covid-19 conditions at Mr. Perkins' prison, FCI Miami, his high risk medical conditions and a recent Department of Justice Memo issued in May 2020. A review and consideration of these factors prove there are extraordinary and compelling reasons for the Court to consider and granting Mr. Perkins' Compassionate Release, particularly now as Mr. Perkins has tested positive for Covid-19.

The Department of Justice issued an internal guidance Memo on May 18, 2020 directing the United States to concede extraordinary and compelling reasons exist when defendants present certain health conditions, including those in the Centers for Disease

---

[1] Likewise, Defense Counsel has reviewed numerous motions filed by other defendants and court orders. Credit is acknowledged for some research and caselaw citations.

LAW OFFICES OF ROTH & DUNCAN, P.A.
SUITE 325 • NORTHBRIDGE CENTRE • 515 NORTH FLAGLER DRIVE • WEST PALM BEACH, FLORIDA 33401 • TEL. (561) 655-5529 • FAX (561) 655-7818

Control and Prevention's high-risk groups. See, United States v. Adeyemi, No. CR 06-124, 2020 WL 3642478, at *10 (E.D. Pa. July 6, 2020).

In United States. v. Medlin, Case No.: 3:09-CR-00204 (MD District Tennessee), (Exhibit "D") the defendant filed a Compassionate Release Motion arguing that based upon the Covid-19 pandemic, his increased vulnerability to Covid-19 due to his medical conditions of COPD, diabetes, his age, 60 years old, and the Covid-19 cases at his prison extraordinary and compelling reasons existed requiring his release. The Government opposed the defendant's Motion arguing that he had not shown "extraordinary and compelling reasons" within the meaning of any provision of Applications Notes to U.S.S.G.§1B1.13. The court agreed with the Government and denied the Motion.

However, on Motion for Reconsideration, the Government changed its position regarding the existence of extraordinary and compelling reasons per the May 18, 2020, D.O.J. Memo. As noted above, because defendant Medlin's age and his diabetes put him at a higher risk for sever illnesses from Covid-19, the Government stipulated that the defendant had established "extraordinary and compelling reasons" for Compassionate Release. See also, Wise v. United States, criminal Case No: ELH-18-72 (D.M.d. May 20, 2020), also referenced the DOJ Memo that inmates who suffer from a condition identified as putting them at higher risk for severe illnesses from Covid-19 thereby present extraordinary and compelling reasons to be considered for Compassionate Release[2].

Included within the CDC "high risks factors" are people with type 2 diabetes. "See, https://www.cdc.gov/coronavirus. Diabetes cause an increase one's blood sugar, and

---

[2] Defense Counsel has not located any decisions within the Southern District of Florida addressing the DOJ Memo.

LAW OFFICES OF ROTH & DUNCAN, P.A.

SUITE 325 • NORTHBRIDGE CENTRE • 515 NORTH FLAGLER DRIVE • WEST PALM BEACH, FLORIDA 33401 • TEL. (561) 655-5529 • FAX (561) 655-7818

poorly controlled blood sugar levels can make a viral disease such as Covid-19 more dangerous as higher blood sugar levels create an environment where viruses are likely to survive. In addition, diabetes weakens the immune system making it harder for people living with the condition to fight off infections others than COVID-19. See, https://www.cdc.gov/people-with-medical-conditions.

Prior to being incarcerated Mr. Perkins was diagnosed as pre-diabetic. His family has a history of diabetes. According, to Mr. Perkins, he had blood work done at FCI-Miami in 2019. However, it was not until October 29, 2020, that the blood test results were evaluated by FCI-Miami medical staff, and he has now been officially diagnosed as having type 2 diabetes and is prescribed diabetes medications. (Exhibit "E")[3].

In addition, to his type 2 diabetis, Mr. Perkins was the victim of firearm accident resulting in a gunshot wound to his chest. The bullet with numerous fragments still remain within his body and are logged within his back chest wall in close proximity to his spinal column. The bullet tore a hole through Mr. Perkins' right lung, which required major surgery to repair the damage and save his life. As a result to the extensive damage caused to the lung, Mr. Perkins has a permanent reduction in his respiratory capacity (Exhibit "E").

The CDC also lists other "risk factors" for Covid-19 including persons who are 50 to 64 years old are four (4) times more likely to suffer from serious complications due to Covid-

---

[3] Counsel has requested from FCI-Miami Mr. Perkins' medical records. Records attached hereto, were obtained and provided to Defense Counsel by Mr. Perkins, (Exhibit "F"). Also, the medical records provided by Assistant United States Attorney Gregory Schiller, (Exhibit "A"), confirm Mr. Perkins' type 2 diabetes.

7

19 related illnesses. Additionally, persons in this 50 to 64 years old age group are thirty

(30) times more likely to die from Covid-19 or Covid-19 related illnesses.



https://www.cdc.gov/coronavirus/2019-ncov/covid-data/investigations-discovery/hospitalization-death-by-age.html

The CDC has recognized that correctional facilities "[present unique challenges for

the control of Covid-19 transmission among incarcerated/detained persons, staff, and

visitors]" See, CDC, "Interim Guidance on Management of Coronavirus Disease 2019

(COVID-19). In Correctional and Detention Facilities," Mar. 23, 2020, at

https://www.cdc.gov.coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html

At the time of Mr. Perkins' sentencing, (February 2019), the concern of Covid-19

had not yet manifested itself into what is now labeled by the World Health Organization

(WHO) as a global pandemic.

8

As one district court recently noted, "prisons are like tinderboxes for infectious disease." United States v. Rodriguez, No. 2:03-CR-00271, 2020 WL 1627331, at *1 (E.D. Pa. Apr. 1, 2020).

Courts around the country have recognized that the risk of Covid-19 to people in jails and prisons "is significantly higher than in the community, both in terms of risk transmission, exposure, and harm to individuals who become infected." See, United States v. Williams, 2020 WL 1751545, at *2 (N.D. Fla. April 1, 2020); United States v. Campagna, 2020 WL 1489829, at *2 (S.D.N.Y Mar. 27, 2020); Castillo v. Barr, 2020 WL 1502864, at *2 (C.D. Cal. Mar. 27, 2020); United States v. Kennedy, 2020 WL 1493481, at *2-3 (E.D. Mich. Mar. 27, 2020); United States v. Garlock, 2020 WL 1439980, at *1 (N.D. Cal. Mar. 25, 2020).

Mr. Perkins is incarcerated at FCI-Miami. News reports began appearing in July 2020, announcing that Covid-19 "Races through FCI-Miami". See, Covid-19 Races through Miami's federal prison, Miami Herald:

https://www.miamiherald.com/news/local/community/miamidade/article244236662.html.

Federal correctional officers reported to the media that the situation within FCI-Miami "is dire with the virus spreading uncontrolled despite the imposition of BOP safety efforts." See, South Florida Federal Corrections Officers Warn of Potential Coronavirus Crisis Brewing, NBC Miami:

https://www.nbcmiami.com/nees/local/south-florida-federal-corrections-officer-warn-of-potential-coronavirus-crisis-brewing/2260242/

9

On July 22, 2020, an article in The Washington Post reported that prison officials at FCI-Miami "have allowed conditions to deteriorate into a public health crisis." (Exhibit "F"). In response to the article, a Bureau spokesperson Mr. Rogan responded to reporter that "prisons safety is a paramount focus." Mr. Rogan published a second article entitled "Families say Bureau of Prisons is Lying About Conditions In Miami." (Exhibit "F"). In the article, families of FCI-Miami prisoners reported that conditions at the prison are intolerable and prisoners are being punished for speaking out. (Exhibit "F").

FCI-Miami is also one of the prisons about which BOP staff filed an "Imminent Danger Report" with the Occupational Safety and Health Administration ("OSHA"). On March 31, 2020, (Exhibit "H"), BOP staff reported health and safety hazards related to Covid-19, which include, contrary to CDC guidelines, BOP officials have directed prison staff throughout the BOP who have come in contact with, or been in close proximity to, individuals who show or have shown symptoms of Covid-19, to nonetheless report to work and not self-quarantine for fourteen (14) days; resulting in prisoners and staff coming in dangerously close contact with each other. (Exhibit "G").

As of December 8, 2020, FCI-Miami houses 887 Inmates. Per the official BOP Covid-19 site, also as of December 8, 2020, FCI-Miami reports 146 inmates tested positive for Covid-19. See, https://www.bop.gov/locations/institutions/mia. FCI-Miami thus remains a facility struggling to control Covid-19.

Now that Mr. Perkins has tested positive for Covid-19, his age and his CDC high risk medical conditions, Mr. Perkins is at great danger if he is to remain incarcerated at FCI-Miami. As someone who is in the higher risk category and now having contracted

10

Covid-19, Mr. Perkins will require highly specialized care, which it is uncertain whether FCI-Miami is equipped to provide. Additionally, as stated earlier the harm to prisoners who become infected with Covid-19 are at greater risk of harm inside a prison than people outside a prison setting. Mr. Perkins has demonstrated extraordinary and compelling reasons exist for this Court to consider his Compassionate Release from prison.

## SENTENCING FACTORS §3553(a)

When extraordinary and compelling reasons are established, the Court must next consider the relevant sentencing factors in §3553(a) to determine whether a sentence reduction is warranted. 18 U.S.C.§3582(c)(1)(A). Under the circumstances in this case, converting the remainder of Mr. Perkins' prison sentence to home confinement, followed by 15 years of supervised release is sufficient to satisfy the purposes of sentencing. Converting Mr. Perkins' prison time to home confinement, followed by 15 years of supervised release remains a very serious punishment.

## MR. PERKINS IS NOT A DANGER TO THE COMMUNITY

The last factor the Court must consider is whether Mr. Perkins is a danger to the community.  He is not. First, he is extremely remorseful for his conduct that has now landed him in prison, and a convicted sex offender.  Prior to this offense, other than some minor misdemeanor offenses as a young adult, Mr. Perkins had lead a law abiding life. He is fully committed to living a law abiding life upon his release from prison.

As noted above, Mr. Perkins is serving time for child pornography charge.

In 2016 the United States Probation and Pretrial Services Office ("USPO") of the Administrative Office of the U.S. Courts published a detailed study, *How Dangerous Are*

11

*They?  An Analysis of Sex Offenders Under Federal Post-Conviction Supervision.*  This twelve (12) page study detailed sex offenders by offense type *and compared them to other federal crimes.* (See Exhibit "H").

The study included data from ninety-four (94) federal judicial districts and comprised 7,416 male sex offenders released from federal prison and placed on supervision during 2007-2013. The study found that "[c]hild pornography offenders were especially likely to be considered low risk, with nearly all (97%) of these offenders initially being assessed in the low or low/moderate risk categories." (See Exhibit "H").

Additionally, the USPO study found that child pornography offenders had a *lower recidivism rate than any other sex offender type offenses* (Exhibit "H").

Mr. Perkins acknowledges that receiving and possessing child pornography is a serious offense.  Yet, even given the nature of this offense, courts have recently released defendants convicted of same or similar charges under compassionate release, including courts in this District.  See, U.S. v. Feucht, 11-CR-60025 DMM ECF No. 53 (S.D. Fla. May 28, 2020); U.S. v. Firebaugh, 16-CR-20341 UU (S.D. Fla. 2009). In Feucht, Judge Middlebrooks noted that while child pornography is a serious offense the fact that the defendant will be monitored by Probation "will lessen the likeliness that he will offend."

In anticipation that the Government will argue that Mr. Perkins has not served enough prison time, it should be noted that courts around the country have granted Compassionate Release Motions even when defendants have not served a majority of their sentences.

12

In <u>United States v. Body</u>, No. 18 CR 503, 2020, WL 2745972 (N.D. ILL. May 27, 2020) the court granted Compassionate Release to a defendant at FCI Terre Haute suffering from diabetes, high cholesterol, an inactive thyroid and gout who served approximately four (4) months of a forty-two (42) moths sentence.

Similarly, in <u>United States v. Young</u>, No: CR19-5055, 2020 WL 2614745 (W.D. Wash. May 22, 2020), the court granted Compassionate Release to 64 year old defendant at FCI Lompoc suffering from hypertension and chronic kidney disease who had served one (1) year of a Five (5) year sentence. In <u>United States v. Delgado</u>, F. Supp. 3d No: 3:18-cr-00017-VAB, 2020 WL 2464685 (D. Conn. Apr. 30, 2020), the judge granted Compassionate Release to a defendant at FCI Danbury suffering from obesity and sleep apnea after the defendant served twenty-nine (29) months of a 120 months sentence.

Courts within the Southern District of Florida have also granted Compassionate Release to defendants who had not served a majority of their sentences. <u>See</u>, <u>United States v. Currington</u>, Case No: 12-CR-20115-MGC (S.D. Fla. May 11, 2020). <u>United States v. Welch</u>, Case No: 09-CR-60212-KAM (S.D. Fla. May 21, 2020).

## MR. PERKINS' PLACE OF RESIDENCE

If this Motion is granted, Mr. Perkins will return to his home in Boca Raton, Florida. The address was previously checked by Mr. Perkins' pretrial officer.  It was verified that the residence is an approved location for a sex offender.  The address is 9759 Richmond Cir., Boca Raton, Florida.  Upon his release, Mr. Perkins will have a job with Irrigation Design Group as an irrigation consultant and water conservation specialist.  Mr. Perkins will

13

be eligible for healthcare through his employer and may also receive supplemental coverage through Medicare or Medicaid.

## ASSISTANT UNITED STATES ATTORNEY SCHILLER OBJECTS

Assistant United States Attorney Schiller objects to this Motion, (Exhibit "C"), but is now reviewing the Motion with his appellate lawyers, in light of Mr. Perkins testing positive for Covid-19.

## CONCLUSION

In the months after this Court sentenced Mr. Perkins to sixty (60) months prison, Covid-19 has now firmly manifested its health dangers to everyone. More importantly, it has changed the danger of a prison sentence for inmates like Mr. Perkins who has now tested positive for Covid-19 and with his CDC high risk medical conditions is at great risk for severe health complications from Covid-19, and according to CDC possible death. This Court did not sentence Mr. Perkins to die for possession of child pornography. His chances for a healthy recovery from Covid-19 will be better accomplished outside of prison, and quarantined in his home with access to his private doctors.

Mr. Perkins respectfully requests that this Court grant his emergency request for compassionate release, and release him to home confinement for the remainder of his prison sentence followed by the fifteen (15) years supervised release with all special conditions.

LAW OFFICES OF ROTH & DUNCAN, P.A.
SUITE 325 • NORTHBRIDGE CENTRE • 515 NORTH FLAGLER DRIVE • WEST PALM BEACH, FLORIDA 33401 • TEL. (561) 655-5529 • FAX (561) 655-7818

Respectfully submitted,

ROTH & DUNCAN, P.A.
Northbridge Centre, Suite 325
515 North Flagler Drive
P.O. Box 770
West Palm Beach, Florida  33402
Telephone:  (561) 655-5529
Email: dougduncan325@gmail.com

DOUGLAS DUNCAN
Florida Bar #309672

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 11, 2020, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the forgoing document is being emailed to Assistant United States Attorney Gregory Schiller.

DOUGLAS DUNCAN

15